**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | | |
|---|---|---|
| KASHMAN HARRIS | : | |
| 15 Deer Path Road | : | |
| Robesonia, PA 19551 | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | No. _____ |
| | : | |
| v. | : | |
| | : | **JURY TRIAL DEMANDED** |
| SKIPPACK EMERGENCY MEDICAL | : | |
| SERVICES, INC. | : | |
| 4058 Mensch Road | : | |
| Skippack, PA 19474 | : | |
| | : | |
| Defendant. | : | |

_____ :

## CIVIL ACTION COMPLAINT

Plaintiff, by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.     This action has been initiated by Kashman Harris (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) against Skippack Emergency Medical Services, Inc. (*hereinafter* referred to as "Defendant," unless indicated otherwise) for violations of Section 1981 of the Civil Rights Act of 1866 ("Section 1981" - 42 U.S.C. § 1981) and Tittle VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 2000e, *et seq*.). As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2.     This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. Any state claims herein or included would be proper under

this Court's ancillary or supplemental jurisdiction to hear state claims arising out of the same common nucleus of operative facts as those set forth in Plaintiff's federal claims.

3.      This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this District because actions underlying this case occurred in this District and Defendant is deemed to reside where they are subject to personal jurisdiction, rendering Defendants herein as well.

## PARTIES

5.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6.      Plaintiff is an adult male residing at the above-captioned address.

7.      Skippack Emergency Medical Services, Inc. ("Defendant") is a Pennsylvania entity providing Ambulance services regionally in Southeastern Pennsylvania.

8.      At all times relevant herein, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

9.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10.     Plaintiff is a 56-year-old, black (African-American) male.

11.     Plaintiff was hired by Defendant in or about August of 2004; and in total, Plaintiff was employed with Defendant for approximately 16 years (until January of 2020, as explained *infra*).

12.     Plaintiff's supervisory hierarchy (in ascending order) while in the employ of Defendant (at relevant times surrounding his termination) was as follows: Todd Evans (Direct Supervisor); Dan Greco (Chief of Operations); and Barry Evans (President).

13.     Plaintiff worked for his first few years with Defendant as a Paramedic. By 2006, Plaintiff was promoted to the position of Battalion Chief.

14.     As the Battalion Chief, Plaintiff worked in a management role, supervised employees, ordered supplies, and engaged in hiring or other management duties as typical of his role.

15.     As Battalion Chief, Plaintiff was generally scheduled for 36 hours per week wherein he was still working the majority of hours as a Paramedic but getting paid and working approximately 12 of the 36 hours in a supervisory or administrative capacity. Hence, Plaintiff worked approximately 24 hours as a Paramedic simultaneously.

16.     In or about 2016, the workplace dynamic was changing dramatically. In particular, a second "Evans" family member was brought into management. At this point in time, Jeanne Evans (wife of Barry Evans) had also become a supervisor working with (and above) Plaintiff.[1]

17.     In the timeframe of 2016-2017, Plaintiff had started experiencing quite a hostile work environment (outlined below). Notably, prior to 2018, Plaintiff had performed remarkably,

_____

[1] Barry Evans was the President, and Jeanne Evans was brought in as the Chief of Skippack EMS.

had never been counseled or disciplined, and was viewed as an outstanding Battalion Chief for nearly a decade.

18.    Todd Evans, Dan Greco, and Jeanne Evans were quite hostile with Plaintiff such that Plaintiff formed the opinion it was likely racially motivated. Plaintiff was in fact the only African-American employee in a supervisory role for Defendant, and Defendant's entire organization was (and likely remains) nearly all non-black.

19.    From 2016 through 2018, Plaintiff experienced the following types of mistreatment:

(a) Jeannie Evans was making derogatory comments about Plaintiff within the workplace to many members of Defendant (although she exhibited serious performance problems and narcotics control problems);

(b) Plaintiff was having duties gradually removed from him (such as the ordering of supplies);

(c) Plaintiff was being treated really abusively by Todd Evans, Jeannie Evans, and Dan Greco;

(d) Plaintiff's scheduling decisions were being adjusted or overridden inappropriately;

(e) Plaintiff was being accused of errors that were so inaccurate, Defendant's management was having to apologize to him;[2]

(f) Communication of supervisory matters were not primarily going through Plaintiff, but rather, being directed through other management;[3]

(g) By May 25, 2018, John Kelly (Vice President of EMS) was e-mailing Barry Evans that Greco appears to be intentionally trying to "antagonize" Plaintiff, fails to assist Plaintiff, schedules people without telling Plaintiff, and permits

_____

[2] Dan Greco for example e-mailed Plaintiff on February 28, 2018 "to apologize" for his treatment of Plaintiff and stated "I hope that we can move forward from this and work together and if I'm doing something wrong, please tell me so I can fix it."

[3] *See* May 19, 2018 e-mail from John Kelly identifying that Plaintiff's supervisory status as being a direct conduit for communications is being completely usurped.

other employees who are totally deficient to continue working without consequence or discipline; and

(h) By June of 2018, John Kelly (Vice President of EMS) was expressing concerns on Plaintiff's behalf that Plaintiff was being singled out and "nailed" for things not enforced against anyone else.[4]

20.     In or about June of 2018, Plaintiff was involuntarily removed from the position of Battalion Chief. This demotion communication to Plaintiff was from Barry Evans.

21.     By July 2018, John Kelly (Vice President of EMS) e-mailed Barry Evans and Dan Greco outlining that: (a) they "accomplished [their] goal of getting rid of Plaintiff; (b) hiring was being done without any input from Plaintiff; (c) Plaintiff was held accountable without any information on supposedly new or changed policies; (d) Greco was "purposely bypassing [Plaintiff] and causing conflict;" (e) nobody else with significant errors or problems were being held accountable except Plaintiff even if Plaintiff did make any mistakes; and (f) what was done to Plaintiff created a very negative image internally.[5]

22.     Following Plaintiff's removal as a Battalion Chief, he was reduced from $34.00 per hour to $29.00 per hour. Additionally, he lost his 12 hours of work in this capacity and was to generally only work the remaining 24 hours in a Paramedic capacity.

---

[4] On behalf of Plaintiff, Kelly wrote to Barry Evans outlining *inter alia*: Dan Greco: (1) "is making no attempt to work together" with Plaintiff; (2) is creating an unprofessional image by having all scheduling run through him instead of Plaintiff; (3) has created many of the problems that reflect on Plaintiff; (4) condones selective enforcement of clothing policies against Plaintiff and tries to "nail" Plaintiff only.

[5] The types of mistreatment Plaintiff experienced in this complaint were just that, examples. Plaintiff endured much more significant mistreatment, but he provides for notice purposes only several examples.

23.     Todd Evans (Caucasian) became the Battalion Chief (and remains in this role through the present). As of elevation to this role, Evans was far less qualified than Plaintiff and had exhibited serious performance concerns.[6]

24.     Plaintiff continued to work for Defendant from 2018 through 2019. He did so in a very professional, hard-working, and objectively stellar manner. Plaintiff was (and remains) an excellent Paramedic and dedicated to helping people, notwithstanding abuse he endured.

25.     During the second half of 2019, Plaintiff was experiencing significant selective treatment. Plaintiff was literally the most qualified Paramedic working for Defendant, yet when he would request or identify availability for work shifts such shifts were repeatedly being given to others, new employees, or per diem workers (who were non-black).

26.     Defendant's management also intentionally gave Plaintiff a difficult time claiming Plaintiff no-showed for a shift on December 13, 2019. But Plaintiff had never no-showed for a shift in over 15 years, and him supposedly being scheduled for said shift was not even properly or effectively communicated to him (if it were the case).[7]

27.     Nonetheless, Plaintiff was *continually being scheduled through early January 2020*, but Plaintiff was rightfully frustrated that he was not being given so many available shifts on such a disparate and intentionally selective basis. Nor was Plaintiff being given open or available roles of more (or full-time) hours that exited in the second half of 2019.

---

[6] While Todd Evans doe share the same last name as Barry and Jeanne Evans, he is not related to them.

[7] There was only a discussion about Plaintiff possibly working a shift on 12/13/19. Greco (and Todd Evans) had told Plaintiff to put a "hold on that" date for work since there may be a conflict with Plaintiff having another full-time job. Plaintiff expected to hear back about whether he was in fact being scheduled or confirmed to work, as Greco intended to see if another person would cover the shift before considering Plaintiff. Plaintiff did not receive a call, text or e-mail indicating he was actually scheduled to work (if that were indeed the case). Plaintiff was still accused of not working that shift.

28.    On January 2, 2020, Plaintiff could not internalize what he was feeling any longer. He e-mailed Peter Macaluso (Vice President) and John Kelly (a volunteer EMT at this time) stating he wanted a formal complaint process to be initiated due to "racial hatred against him." He further identified that he had become aware that Greco uses racial slurs.

29.    Instead of scheduling a meeting with Plaintiff based upon his request to discuss racial discrimination concerns:

- On January 3, 2020, Macaluso told Plaintiff "the racial slur is a serious accusation" via e-mail;

- On January 7, 2020, Plaintiff was e-mailed by Greco that his complaints will be discussed at the personnel meeting tonight (inclusive of with Macaluso);

- On January 23, 2020, Plaintiff was e-mailed by Greco: "You have been temporarily removed from the schedule. This includes all shifts from this date forward."

30.    Plaintiff was terminated from his employment effective June 23, 2020, as he was never permitted to resume working, never rescheduled, and never given any response to inquiries about when he could resume working. And Plaintiff's termination (regardless of label) occurred *within 15 business days* of Plaintiff expressing racial discrimination concerns.

31.    Nothing prior to Plaintiff's federally-protected complaint of discrimination resulted in Plaintiff's termination from employment, as: (1) he was still being scheduled up to his complaint of discrimination and thereafter; (2) he only had 1 disciplinary incident to his knowledge in nearly 16 years (although the scheduling issue was not even his fault); and (3) there were no intervening incidents resulting in Plaintiff's (permanent) schedule removal and termination other than his complaint(s) of racial discrimination.

32.    Lastly, Defendants did not even meet with Plaintiff about his serious racial concerns, let alone conduct any formal investigation before rushing to promptly retaliate against Plaintiff by and through a permanent schedule removal (and termination from employment).

## Count I
## <u>Violations of 42 U.S.C. § 1981</u>
## (Racial Discrimination & Retaliation)

33.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

34.     Plaintiff was demoted, denied additional shifts, denied full-time work, and terminated because of his race.

35.    Plaintiff was also denied shifts, permanently removed from the work schedule, and terminated due to complaints of racial discrimination.

36.    These actions as aforesaid constitute violations of 42 U.S.C. § 1981.[8] And no administrative exhaustion of such claims is required under § 1981.

## Count II
## <u>Violations of Title VII of the Civil Rights Act of 1964</u>
## (Racial Discrimination & Retaliation)

37.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

38.    Administrative exhaustion is required to proceed under Title VII of the Civil Rights Act of 1964 ("Title VII"). Plaintiff legally and effectively exhausted such filing requirements with the Equal Employment Opportunity Commission ("EEOC") as follows:

> (1) On or about January 24, 2020, Plaintiff attempted to initiate and file a Charge with the EEOC for discrimination and retaliation as outlined in this lawsuit. Once this is done, any deadlines or statute of limitations for EEOC filings are automatically tolled because the EEOC is so backlogged while it issues an "inquiry number." Plaintiff was in fact assigned an EEOC inquiry number of 530-2020-02026.

---

[8] *See Jones v. R.R. Donnelley & Sons Co*., 541 U.S. 369, 382, 124 S. Ct. 1836, 158 L. Ed. 2d 645 (2004)(resolving split nationwide that § 1981 claims are governed by a 4-year statute of limitations. *See also Haynes v. Northrop Grumman Shipbuilding, Inc*., 2011 U.S. Dist. LEXIS 33230, at *14 (S.D. Miss. 2011)(following the Supreme Court's holding in Donnelley, all demotion or termination claims under §1981 are governed by a 4-year statute of limitations).

(2) The EEOC upon receiving an inquiry is supposed to meet with a claimant (such as Plaintiff) to formalize a Charge. Due to the COVID-19 pandemic, Plaintiff was not scheduled until 9/9/20 to participate in an EEOC interview to formalize his Charge.

(3) On 9/3/20, Plaintiff was informed by the EEOC due to "unforeseen circumstances" his meeting to formalize his Charge was "cancelled" and that he would be contacted to "finalize" his "Charge." Therein, the EEOC "apologized" to Plaintiff.

(4) Plaintiff continued to try to follow up with the EEOC to formalize his Charge but had learned that the EEOC lost, misplaced, or closed his file. Plaintiff was regularly expressing concerns to the EEOC that he was unable to check the status of his case on the EEOC electronic portal.

(5) After waiting for more than a year following repeated EEOC errors, Plaintiff was sent an e-mail (dated March 10, 2021) from Robert McMeekin of the EEOC (a Supervisor). Therein, on behalf of the EEOC, McMeekin apologized to Plaintiff stating the EEOC completely failed to follow up with him, the EEOC engaged in a substantial "oversight," the EEOC reopened his inquiry, and wanted information substantiating his Charge.

(6) Plaintiff immediately submitted Charge information and questionnaires to the EEOC on march 16, 2021, *within less than a week*.

(7) Following submissions by Plaintiff to the EEOC as requested, McMeekin again reiterated his apologies, advised that he needed to consult with his management on how to handle the EEOCs errors, and informed Plaintiff that a right-to-sue letter was being issued because so much time had passed.

(8) On March 23, 2021, the EEOC issued Plaintiff a right-to-sue letter for him to pursue racial and retaliation claims against Defendant. And Plaintiff timely initiated this lawsuit from receipt of the right-to-sue letter.

(9) There is nothing Plaintiff could have done further to properly exhaust his administrative claims before the EEOC due to the pandemic and it's repeated errors.

(10) It's well established that there is a frequent problem with EEOC errors and they should never inure to the detriment or prejudice a litigant. *See e.g. Holender v. Mut. Indus. N., Inc.*, 527 F.3d 352, 357 (3d Cir. 2008)(explaining mistakes by the EEOC cannot prejudice any party, and it is for Congress to address institutional problems within the EEOC also recognized by the Supreme Court in *Holowecki*).

39.     Plaintiff's claims herein though are different than as set forth under §1981. Plaintiff only seeks relief under Title VII for those incidents occurring within 300 days prior to January 24, 2020.

40.     In 2019, Plaintiff was denied shifts, permanently removed from the work schedule, and terminated due to his race or complaints of racial discrimination.

41.     These actions as aforesaid constitute violations of Title VII.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

B.     Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

C.     Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

D.     Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

E.     Plaintiff is to receive a trial by jury as requested in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: April 7, 2021

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

|  |  |  |
|---|---|---|
| Kashman Harris | : | CIVIL ACTION |
| v. | : |  |
| Skippack Emergency Medical Services, Inc. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)  ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  (X )

| 4/7/2021 | | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

UNITED STATES DISTRICT COURT
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

### DESIGNATION FORM

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff:  15 Deer Path Road, Robesonia, PA 19551

Address of Defendant:  4058 Mensch Road, Skippack, PA 19474

Place of Accident, Incident or Transaction:   Defendant's place of business

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? — Yes [ ]  No [X]

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? — Yes [ ]  No [X]

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? — Yes [ ]  No [X]

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? — Yes [ ]  No [X]

I certify that, to my knowledge, the within case [ ] is / [X] is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE:  4/7/2021                          ARK2484 / 91538

*Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.**  *Federal Question Cases:*

- [ ] 1. Indemnity Contract, Marine Contract, and All Other Contracts
- [ ] 2. FELA
- [ ] 3. Jones Act-Personal Injury
- [ ] 4. Antitrust
- [ ] 5. Patent
- [ ] 6. Labor-Management Relations
- [X] 7. Civil Rights
- [ ] 8. Habeas Corpus
- [ ] 9. Securities Act(s) Cases
- [ ] 10. Social Security Review Cases
- [ ] 11. All other Federal Question Cases
      *(Please specify):* _____

**B.**  *Diversity Jurisdiction Cases:*

- [ ] 1. Insurance Contract and Other Contracts
- [ ] 2. Airplane Personal Injury
- [ ] 3. Assault, Defamation
- [ ] 4. Marine Personal Injury
- [ ] 5. Motor Vehicle Personal Injury
- [ ] 6. Other Personal Injury *(Please specify):* _____
- [ ] 7. Products Liability
- [ ] 8. Products Liability – Asbestos
- [ ] 9. All other Diversity Cases
      *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I,  Ari R. Karpf                                , counsel of record *or* pro se plaintiff, do hereby certify:

- [X] Pursuant to Local Civil Rule 53.2, § 3(c ) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

- [ ] Relief other than monetary damages is sought.

DATE:  4/7/2021                          ARK2484 / 91538

*Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

HARRIS, KASHMAN

## DEFENDANTS

SKIPPACK EMERGENCY MEDICAL SERVICES, INC.

**(b)** County of Residence of First Listed Plaintiff    Berks
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Montgomery
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Karpf, Karpf & Cerutti, P.C.; 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020; (215) 639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- 1   U.S. Government Plaintiff
- **X** 3   Federal Question *(U.S. Government Not a Party)*
- 2   U.S. Government Defendant
- 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated *or* Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury - Product Liability | 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | | 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability | 368 Asbestos Personal Injury Product Liability | | 830 Patent | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | | | 835 Patent - Abbreviated New Drug Application | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | **PERSONAL PROPERTY** | | 840 Trademark | 460 Deportation |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle | 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | 470 Racketeer Influenced and Corrupt Organizations |
| | 355 Motor Vehicle Product Liability | 371 Truth in Lending | 710 Fair Labor Standards Act | 861 HIA (1395ff) | 480 Consumer Credit |
| 160 Stockholders' Suits | 360 Other Personal Injury | 380 Other Personal Property Damage | 720 Labor/Management Relations | 862 Black Lung (923) | 490 Cable/Sat TV |
| 190 Other Contract | 362 Personal Injury - Medical Malpractice | 385 Property Damage Product Liability | 740 Railway Labor Act | 863 DIWC/DIWW (405(g)) | 850 Securities/Commodities/ Exchange |
| 195 Contract Product Liability | | | 751 Family and Medical Leave Act | 864 SSID Title XVI | 890 Other Statutory Actions |
| 196 Franchise | | | | 865 RSI (405(g)) | 891 Agricultural Acts |
| | | | 790 Other Labor Litigation | | 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | 895 Freedom of Information Act |
| 210 Land Condemnation | 440 Other Civil Rights | **Habeas Corpus:** | | 870 Taxes (U.S. Plaintiff or Defendant) | 896 Arbitration |
| 220 Foreclosure | 441 Voting | 463 Alien Detainee | | 871 IRS—Third Party 26 USC 7609 | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 230 Rent Lease & Ejectment | **X** 442 Employment | 510 Motions to Vacate Sentence | | | |
| 240 Torts to Land | 443 Housing/ Accommodations | 530 General | | | 950 Constitutionality of State Statutes |
| 245 Tort Product Liability | 445 Amer. w/Disabilities - Employment | 535 Death Penalty | **IMMIGRATION** | | |
| 290 All Other Real Property | 446 Amer. w/Disabilities - Other | **Other:** | 462 Naturalization Application | | |
| | 448 Education | 540 Mandamus & Other | 465 Other Immigration Actions | | |
| | | 550 Civil Rights | | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- **X** 1 Original Proceeding
- 2 Removed from State Court
- 3 Remanded from Appellate Court
- 4 Reinstated or Reopened
- 5 Transferred from Another District *(specify)*
- 6 Multidistrict Litigation - Transfer
- 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Section 1981 (42USC1981); Title VII (42USC2000)

Brief description of cause:
Violations of Section 1981 and Title VII.

## VII. REQUESTED IN COMPLAINT:

- CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND: **X** Yes   No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE   4/7/2021

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

| Print | Save As... | Reset |