**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| KASHMAN HARRIS | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | No. 21-1636-JMG |
| v. | : | |
| | : | |
| SEMS, INC. t/a | : | |
| Skippack Emergency Medical Services, Inc. | : | |
| | : | |
| Defendant. | : | |

---

**JOINT RULE 26(f) REPORT**

In accordance with Fed. R. Civ. P. 26(f), counsel for the parties conferred on <u>August 26, 2021</u> and submit the following report of their meeting for the court's consideration:

**I.     Counsel**

      A.  Lead counsel for Plaintiff:        Adam C. Lease

      B.  Lead counsel for Defendant:      Tracy A. Walsh

      C.  Counsel who participated in Rule 26(f) conference on behalf of Plaintiff(s):

          Adam C. Lease

      D.  Counsel who participated in Rule 26(f) conference on behalf of Defendant(s):

          Tracy A. Walsh

**II.     Description of Claims and Defenses**

      **A.      Plaintiff's Claims**

In August of 2004, Mr. Harris was hired by Defendant and worked his first few years as a Paramedic. By 2006, he was promoted to the position of Battalion Chief. Throughout 2016 – 2018, Mr. Harris was subjected to a hostile work environment on account of his race. In June of 2018, Mr. Harris was involuntarily removed from the position of Battalion Chief, which resulted in lower pay and fewer hours. Mr. Harris' former Battalion Chief position was given to a Caucasian, who was far less qualified and had exhibited serious performance concerns.

Mr. Harris was falsely accused of being a no-show for his December 13, 2019 shift. On January 2, 2020, Mr. Harris emailed two of Defendant's vice presidents and stated that he wanted a formal complaint process to be initiated due to "racial hatred against him." On January 23, 2020, Mr. Harris was terminated merely 15 business days after complaining of race discrimination.

### B.    Defendant's Defenses

Skippack EMS denies Plaintiff's claims of discrimination and retaliation. Skippack Emergency Medical Services, Inc., whose correct name is SEMS, Inc., is organized under the Pennsylvania Non-Profit Corporation Law and is an exempt organization under Section 501(c)(3) of the Internal Revenue Code. Skippack EMS is volunteer-run and provides ambulance, emergency medical, and first aid services. Skippack EMS serves all of Skippack Township and parts of other townships and surrounding areas in Southeastern PA. At all times relevant hereto, Plaintiff was employed elsewhere in full time positions. Plaintiff began working as a paramedic with Skippack EMS in or about August 2005. In or about 2006, Plaintiff was promoted to the position of Battalion Chief. Plaintiff was to perform duties for two positions – Battalion Chief and paramedic. In these two positions, Plaintiff's hours were not consistent. Initially, Plaintiff was expected to work 36 hours per week, performing paramedic duties 32 hours per week and Battalion Chief duties 4 hours per week. At some point, Plaintiff asked to increase the Battalion Chief hours and decrease the paramedic hours, totaling 36 hours per week, and he was expected to perform paramedic duties 24 hours per week and Battalion Chief duties 12 hours per week. Plaintiff's rate of pay for paramedic/Battalion Chief positions was $32.75. In or about July 2018, Plaintiff stepped down from the Battalion Chief position effective August 1, 2018. Plaintiff's rate of pay for the paramedic position thereafter was $29.00 per hour.

In December 2019, following multiple incidents involving Plaintiff's conduct and work performance, and no call/no show, the Skippack EMS Personnel Committee determined to temporarily remove Plaintiff from the paramedic schedule. Plaintiff was notified of his temporary removal from the schedule in January 2020. Plaintiff was not terminated from employment. In October 2020, Plaintiff informed Skippack EMS that he was off work from all current employers until further notice.

## III.    Stipulated Facts

1.    Skippack Emergency Medical Services, Inc. (the name of the corporation is SEMS, Inc. t/a Skippack Emergency Medical Services, Inc. hereinafter "Defendant") is organized under the Pennsylvania Non-Profit Corporation Law and is an exempt organization under Section 501(c)(3) of the Internal Revenue Code.

2.      Defendant is volunteer run and provides ambulance, emergency medical, and first aid services and serves all of Skippack Township and parts of other townships and surrounding areas in Southeastern Pennsylvania.

3.      Plaintiff is a 56-year-old, black (African-American) male.

4.      Plaintiff was hired by Defendant in or about August of 2005 as a paramedic.

5.      As of January 2020, when Plaintiff worked as a paramedic, the Battalion Chief was Todd Evans; the Chief of Operations was Dan Greco; and the President was Barry Evans.

6.       In or about 2006, Plaintiff was promoted to the position of Battalion Chief. Beginning in or about 2006, Plaintiff was to perform duties for two positions, which were Battalion Chief and paramedic.

7.      When he worked in the position of Battalion Chief, Plaintiff's position was a management role, responsible for supervising employees, ordering supplies, and participating in hiring.

8.      Jeanne Evans, who has been a member of Defendant since approximately 2001, was elected Chief of Operations for the term January 1, 2016 to December 31, 2016. Jeanne Evans is the wife of Barry Evans, President.

9.      In January 2020, Plaintiff was notified that he was being removed from the paramedic schedule until further notice.

## IV.    Jurisdiction

This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. Any state claims would be proper under this Court's ancillary

or supplemental jurisdiction to hear state claims arising out of the same common nucleus of operative facts as those set forth in Plaintiff's federal claims.

**V.    Insurance Coverage and Deductibles**

Applicable insurance documents of the parties will be addressed in the parties' Rule 26(a)(1) initial disclosures.

**VI.    Dispositive Motions**

Defendant expects to file a motion for summary judgment after the conclusion of discovery.

**VII.    Anticipated Scope of Discovery**

A.  <u>The Parties will seek discovery into the factual underpinnings of Plaintiff's claims of retaliation/wrongful termination, and whether and to what extent Plaintiff suffered any damages as a result of Defendant's alleged actions.</u>

B.  Anticipated number of interrogatories per Party:        <u>25</u>

C.  Anticipated number of depositions per Party:        Plaintiff: <u>7-8; Defendant: 3-4</u>

D.  To the extent either Party proposes to exceed the presumptive limits in the Federal Rules of Civil Procedure for discovery, explain the basis for that proposal. <u>Not applicable</u>.

E.  Do the Parties anticipate the need for any third-party discovery?  If so, identify the likely third-parties and the discovery to be sought. <u>Yes. The Parties anticipate the need for third-party discovery from Plaintiff's medical treatment providers</u>.

F.  Do the Parties anticipate the need for experts?  If so, identify the subjects on which the expert(s) may opine. <u>Yes. Defendant may retain an expert  for an examination of Plaintiff on the subject of damages.</u>

**VIII.    Status of Discovery**

The Parties have exchanged initial disclosures and are in the process of conducting paper discovery.

**IX.    Proposed Case Management Deadlines**

When completing this section, the Parties should presume that the Court will <u>not</u> bifurcate fact and expert discovery.  Therefore, the Parties should propose dates that take that presumption into account.

A.   Deadline to serve initial disclosures under Rule 26(a)(1) (*must be exchanged at least one (1) business day before Rule 16 conference):        <u>September 15, 2021</u>

B.   Deadline to amend pleadings to add claims or Parties (*must be as early as practicable to avoid prejudice or unnecessary delays):        <u>September 15, 2021</u>

C.   Deadline for affirmative expert reports (if any) and disclosure of lay witness opinion testimony with related information and documents (if any): <u>The parties propose that Plaintiff's expert reports, if any, will be due 30 days after the fact discovery deadline and that Defendant's expert reports will be due 30 days thereafter. The parties will complete expert depositions prior to the final pretrial conference in accordance with this Honorable Court's scheduling order.</u>

D.   Deadline for rebuttal expert reports (if any):        <u>15 days after Defendant's expert reports are served.</u>

E.   Deadline to complete discovery:

<u>December 20, 2021</u>

F.   If any Party seeks more than 120 days for fact discovery, explain why.

<u>N/A</u>

G.  Deadline to file motion for summary judgment:

January 20, 2022

H.  Estimated trial ready date:

60 days following the Court's decision on summary judgment

I.  Estimated Number of Days for Trial:                    4-5 days

## X.    Deposition Scheduling

The Court expects the Parties to meet and confer as soon as practicable to set aside dates to hold open for depositions before the close of discovery.  If the Parties have not already done so, the Court will order the Parties to do so within two weeks of the Rule 16 conference.

Have the Parties set aside dates for deposition?  ___ Yes  _X__ No

If yes, what are those dates?  _____

If no, when do the parties intend to confer, and how many dates do they intend to set aside? The Parties will confer as to deposition dates. The Parties anticipate the need to set aside 3 to 5 dates for depositions.

## XI.    Electronic Discovery

The Parties do not anticipate the need for any special management related to the discovery of electronically-stored information ("ESI") at this time. The Parties agree to produce ESI in PDF format where feasible. In the event that production of ESI in other forms becomes necessary, the Parties will collaborate to facilitate the production.  In the event needed, the Parties will prepare and submit an ESI Stipulation for the Court's review and approval.

## XII.    Protective Orders and Confidentiality Agreements

The Parties may stipulate to a confidentiality agreement for the discovery of confidential information, pertaining to Plaintiff's medical records and Defendants' records as to non-parties,

employees (current and former), volunteers, members; personnel and financial information.  The Parties shall attempt in good faith to resolve any dispute that may arise and will only seek appropriate application with the Court in order to protect the rights created by any confidentiality agreement.

XIII.   **Alternative Dispute Resolution**

A.   Have the Parties engaged in any settlement discussions? If so, set forth the status of those negotiations. If not, explain why not. <u>Plaintiff has made a settlement demand. The Parties will notify the Court for referral to Magistrate Judge Rice for a settlement conference once the Parties have reached an agreement on the timing of the conference.</u>

B.   Have the Parties explored or considered other forms of alternative dispute resolution? If so, summarize those efforts. If not, state the Parties' positions with respect to ADR, as required under Local Rule of Civil Procedure 53.3.

   <u>Yes. The Parties will notify the Court for referral o Magistrate Judge Rice for a settlement conference once the Parties have reached an agreement on the timing of the conference.</u>

C.   Identify the individual who will attend the Rule 16 conference who will have authority to discuss settlement.

*For Plaintiff*: Adam C. Lease, Esq.

*For Defendants:*  Tracy A. Walsh, Esq.

XIV.   **Consent to Send Case to a Magistrate Judge**

   The Parties do not consent to magistrate judge jurisdiction.

**XV.     Policies and Procedures**

    Judge Gallagher's Policies and Procedures are available for the Parties to review on the Court's website. By signing below, counsel for each Party and/or each *pro se* Party represents that he or she has reviewed the Judge's Policies and Procedures and acknowledges the requirements contained therein. The Parties and their counsel further acknowledge by signing below that Judge Gallagher will strike pleadings and other submissions that do not comply with his Policies and Procedures.

**XVI.     Other Matters**

    None at this time.

**ACKNOWLEDGEMENT OF RULE 26(F) MEETING AND THE ABOVE SUBMISSION TO THE COURT:**

| | |
|---|---|
| */s/ Adam C. Lease* | */s/ Tracy A. Walsh* |
| Adam C. Lease, Esq. | Tracy A. Walsh, Esq. |
| Karpf, Karpf & Cerutti, P.C. | Weber Gallagher Simpson |
| 3331 Street Road | Stapleton Fires & Newby LLP |
| Two Greenwood Square, Suite 128 | 2000 Market Street, Suite 1300 |
| Bensalem, PA 19020 | Philadelphia, PA 19103 |
| (215) 639-0801 | (215) 825-7224 |
| *Attorneys for Plaintiff* | *Attorneys for Defendant* |

Date:   August 26, 2021